# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

RONALD GARREN,

     Plaintiff

v.

JAMES DZURENDA, et al.,

     Defendants

Case No.: 3:23-cv-00141-MMD-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 4, 5

     This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

     Before the court is Plaintiff's motion seeking a temporary restraining order and preliminary injunction. (ECF Nos. 4, 5.)[1] The Office of the Attorney General filed a limited notice of appearance on behalf of Interested Party, the Nevada Department of Corrections (NDOC), for the purpose of responding to Plaintiff's motion for injunctive relief. (ECF No. 13.) NDOC also filed a response to Plaintiff's motion. (ECF Nos. 14, 14-1 to 14-21, errata at 16-1.) Plaintiff filed a reply. (ECF No. 18.)

     After a thorough review, it is recommended that Plaintiff's motion be denied.

## I. BACKGROUND

     Plaintiff is an inmate in the custody of the NDOC proceeding pro se with this action pursuant to 42 U.S.C. § 1983 as well as the Religious Land Use and Institutionalized Persons Act

---

[1] These documents are identical, but they were docketed separately due to the two forms of relief requested.

(RLUIPA). (Compl., ECF No. 11.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC).

Plaintiff's complaint was screened, and he was allowed to proceed with the following claims: (1) a retaliation claim against Chaplain Davis in Claim 1 alleging that Davis removed Plaintiff's Native American verification from his file in retaliation for pursuing a grievance on that topic; (2) First Amendment Free Exercise Clause, RLUIPA, and Fourteenth Amendment Equal Protection Clause claims against Dzurenda, Castro, Garrett, and Williams in Claim 2 related to Administrative Regulation (AR) 810, which requires inmates to prove Native American heritage to participate in sweat lodge ceremonies when there is no similar requirement for Christian, Jewish, or Islamic inmates; and (3) First Amendment Free Exercise Clause and RLUIPA claims against LeGrand, Castro, Garrett, and Wickham in Claim 3 based on allegations that LCC is not following its operational procedure in refusing to permit Native Americans to perform the sweat lodge/prayer pipe ceremony required by their religion.

Plaintiff alleges that he is a member of the Wyandotte Nation,[2] and on February 8, 2022, he claims he sent a request form to Chaplain Davis asking when the Native American land (within LCC) would re-open for sweat lodge ceremonies. Davis responded that the religious grounds and chapel would re-open when COVID-19 emergency protocols end. On February 14, 2022, Plaintiff claims he filed a grievance asserting that other religious groups were allowed to use the activity room, but Native Americans were being denied access to the religious grounds. On April 21, 2022, Chaplain Davis sent Plaintiff a memo informing him there was no tribal verification in his i-file, and once he documented his tribal verification he would be allowed to

---

[2] This is a federally recognized Native American tribe. *See* Federal Register: Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, last visited Jan. 30, 2024.

participate in sweat lodge ceremonies. Plaintiff asserts that he had previously been allowed to access the Native American grounds between November 2012 and January 2019. He claims that Chaplain Davis removed his authorization from his i-file in retaliation for pursuing his grievance.

Plaintiff then filed a grievance arguing that NDOC's AR 810, which requires inmates to prove Native American heritage to participate in sweat lodge ceremonies, interferes with his right to exercise his religion and violates his equal protection rights because no similar requirement applies to Christian, Jewish, or Islamic inmates. He alleges AR 810 was promulgated and adopted by Dzurenda; Caseworker Castro denied his informal grievance; Warden Garrett denied his first level grievance; and Deputy Director Williams denied him any relief.

On August 21, 2022, Plaintiff presented Chaplain Davis with a letter from the Wyandotte Nation verifying his membership in the tribe. However, as of May 23, 2022, sweat lodge ceremonies were still not allowed at LCC due to COVID-19 restrictions per Chaplain Davis. Plaintiff avers that between August 2022 and January 2023, he pursued kites and grievances complaining that his religion requires that he pray and perform the pipe ceremony in a sweat lodge. He asserts that LeGrand, Castro, Garrett, and Wickham denied his requests and since September 12, 2020, LeGrand, Castro, Garrett, and Wickham have refused to permit Native Americans to perform their sweat lodge/prayer pipe ceremony.

Plaintiff moves for a temporary restraining order (TRO) and/or preliminary injunction requiring LCC staff to allow Native Americans to conduct a *weekly* sweat lodge/prayer pipe/smudging ceremony, as he claims was done for decades prior to the COVID-19 shutdown.

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted).

The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).). The Ninth Circuit has held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (citation and quotation marks omitted).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, the PLRA limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

A temporary restraining order is appropriate when irreparable injury may occur before the court can hold a hearing on a motion for preliminary injunction. *See* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999). The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *see also* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for preliminary injunction and the proceeding is not subject to any special requirements."). A temporary restraining order "should

1  be restricted to serving [its] underlying purpose of preserving the status quo and preventing

2  irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose*

3  *Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974).

**III. DISCUSSION**

5  Plaintiff's motion only relates to his RLUIPA claim concerning his ability to participate

6  in sweat lodge ceremonies which is the RLUIPA claim in Claim 3 against LeGrand, Castro,

7  Garrett, and Wickham.

8  **A. RLUIPA**

9  Under RLUIPA, the government cannot "impose a substantial burden on the religious

10  exercise" of an inmate unless it demonstrates that "imposition of the burden on that person—

11  (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means

12  of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

13  "The Supreme Court has recognized RLUIPA as...[a] 'congressional effort[] to accord

14  religious exercise heightened protection from government-imposed burdens[.]'" *Greene* v.

15  *Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709,

16  714 (2005)). RLUIPA is "more generous to the religiously observant than the Free Exercise

17  Clause." *Jones v. Slade,* 23 F.4th 1124, 1139 (9th Cir. 2022) (citations omitted). "As such,

18  RLUIPA is to be 'construed broadly in favor of protecting an inmate's right to exercise his

19  religious  beliefs.'" *Id.* at 1140 (quoting *Warsoldier v. Woodford,* 418 F.3d 989, 995 (9th Cir.

20  2005)); *see also Johnson v. Baker,* 23 F.4th 1209, 1214 (9th Cir. 2022) (citation omitted).

21  However, "[c]ourts are expected to apply RLUIPA's standard with due deference to the

22  experience and expertise of prison and jail administrators in establishing necessary regulations

23  and procedures to maintain good order, security and discipline, consistent with consideration of

1  costs and limited resources." *Hartmann v. Cal. Dep't of Corr.*, 707 F.3d 1114, 1124 (9th Cir.

2  2013) (internal quotation marks and citation omitted).

3      "Under RLUIPA, the challenging party bears the initial burden of proving that his

4  religious exercise is grounded in a sincerely held religious belief ..., and that the government's

5  action substantially burdens his religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015)

6  (citations omitted); *see also Jones,* 23 F.4th at 1140; *Johnson,* 23 F.4th at 1214.

7      If the plaintiff makes a showing of a substantial burden on the exercise of his religion, the

8  burden shifts to the defendant to establish that the burden on religious exercise furthers "a

9  compelling governmental interest," and does so "by the least restrictive means." 42 U.S.C.

10  § 2000cc-1(a), (b); *Holt,* 574 U.S. at 362 (citation omitted); *Jones,* 23 F.4th at 1141 (citations

11  omitted); *Greene*, 513 F.3d at 988.

12  **B. Analysis**

13      Plaintiff has been a registered member of a Native American religious group, and

14  regularly attended the Native American sweat lodge on Saturdays between 2012 and 2019.

15  Access became unavailable at some point in 2020 as a result of the COVID-19 pandemic, and

16  Plaintiff asserts that on February 9, 2022, Chaplain Davis told inmates that the chapel and

17  religious grounds would re-open when the COVID-19 emergency protocols end. In May 2022,

18  he claims that Chaplain Davis said they would not be able to use the sweat lodge until the

19  COVID-19 restrictions were lifted. In August 2022, Plaintiff filed a grievance because Native

20  Americans were still not allowed to access the sweat lodge. At that point, Castro told him that

21  the religious grounds were open, but Native Americans were still not able to access the sweat

22  lodge due to staffing issues. Plaintiff maintains that NDOC's Administrative Regulation AR 810

23  and LCC's Operational Procedure (OP) 810 allow Native Americans to access the sweat lodge,

and that for years, this occurred. He argues that neither COVID-19 protections (which have been lifted) nor safety and security reasons (because the sweat lodge lies in direct sight of a gun tower that is always manned) justify restricting access to the sweat lodge. Plaintiff asserts that denying him the ability to use the sweat lodge denies him the right to cleanse the body and purify the soul to the great spirit, which places his salvation at issue. (Pl. Aff., ECF No. 4 at 28 ¶ 11.)

NDOC does not dispute that Plaintiff has a sincerely held religious belief regarding participation in the Native American sweat lodge ceremony. Nor does NDOC dispute that an outright ban on using the sweat lodge (absent health and safety concerns) would substantially burden his religious exercise. Instead, NDOC argues that Plaintiff has had roughly monthly access to the sweat lodge, and he has not requested *weekly* access to the sweat lodge. As such, NDOC contends that his religious exercise has not been substantially burdened. In addition, NDOC argues that Plaintiff is not likely to succeed on the merits because he did not exhaust his administrative remedies as to his claim he is entitled to weekly access to the sweat lodge.

After Plaintiff filed this lawsuit, but before he filed his motion seeking injunctive relief, Plaintiff, on behalf of the Native Americans at LCC, submitted a request to build a new sweat lodge on April 24, 2023. The rebuilding and ceremony was requested to take place on May 28, 2023. This request was approved by Chaplain Davis and Associate Warden LeGrand. (ECF No. 14-10 at 2-3.) Plaintiff then submitted and was granted authorization to access the sweat lodge on the following additional dates: July 9, 2023, August 13, 2023, September 10, 2023, September 24, 2023 (fall equinox), October 22, 2023, November 19, 2023, and December 24, 2023. (ECF Nos. 14-11 to 14-17.) Thus, Plaintiff has been authorized to use the sweat lodge roughly once a month since May 2023.

As NDOC points out, each of Plaintiff's requests to use the sweat lodge since May 2023 have been authorized. There is no evidence that since access to the sweat lodge has resumed that he has submitted a request to access the sweat lodge more frequently, *i.e.*, weekly, and that request was denied.

For purposes of this motion for injunctive relief, the court cannot conclude that Defendants are substantially burdening Plaintiff's religious exercise by denying him *weekly* access to the sweat lodge when he has not presented evidence that he has requested and was denied *weekly* access to the sweat lodge. The court also cannot say that Plaintiff is *likely* to suffer irreparable injury in the absence of injunctive relief when every time Plaintiff has requested access to the sweat lodge in the past seven months, his request was granted.

This is a separate issue from whether Plaintiff might demonstrate that Defendants substantially burdened his religious exercise between October 2020 and March 2023, when he was apparently completely denied access to the sweat lodge, and consequently, whether Defendants had a compelling government interest for doing so that was the least restrictive means to further that interest. The court is only concluding at this juncture that Plaintiff is not entitled to an order requiring LCC to provide *weekly* access to the sweat lodge where Plaintiff has not presented evidence that Defendants are substantially burdening his religious exercise in that regard or that he is likely to suffer irreparable injury without that specific injunctive relief.

For these reasons, Plaintiff's motion for injunctive relief should be denied.

In light of the court's conclusion, it need not reach NDOC's argument that Plaintiff is not likely to succeed on the merits because he failed to exhaust on this issue.

///

///

9

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's request for injunctive relief (ECF Nos. 4, 5.)

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 30, 2024

_____
Craig S. Denney
United States Magistrate Judge